1  Jean E. Williams
   Acting Assistant Attorney General
2  Environment and Natural Resources Division
   U.S. Department of Justice

3
   David L. Dain
4  Senior Counsel
   Environmental Enforcement Section
5  U.S. Department of Justice
   999 18th Street, South Terrace, Suite 370
6  Denver, Colorado
   (303) 844-7371
7  david.dain@usdoj.gov

8  Joseph H. Harrington
   Acting United States Attorney
9  Eastern District of Washington
   John T. Drake
10 Assistant United States Attorney
   920 W. Riverside Ave, # 300
11 Spokane, WA 99210-1494
   Telephone:  (509) 835-6347
12 JDrake@usa.doj.gov

13 Attorneys for Plaintiff United States

14
                    UNITED STATES DISTRICT COURT
15                  EASTERN DISTRICT OF WASHINGTON

16 UNITED STATES OF AMERICA

17              Plaintiff,                  Civil No. 2:21-cv-130

18              v.                          COMPLAINT

19 MULTISTAR INDUSTRIES, INC.

20              Defendant.


United States of America Complaint - 1

The United States of America ("United States"), by the authority of the Attorney General of the United States, on behalf of the United States Environmental Protection Agency ("EPA"), alleges as follows:

## NATURE OF ACTION

1.    This is a civil action for injunctive relief and civil penalties brought against Multistar Industries, Inc. ("Multistar" or "Defendant") under Section 113(b) of the Clean Air Act ("CAA"), 42 U.S.C. 7413(b), alleging that Defendant violated the risk management program requirements of CAA Section 112(r)(7), 42 U.S.C. § 7412(r)(7), its implementing regulations at 40 C.F.R. Part 68, and the terms of an Administrative Order on Consent issued under Section 113(a)(4) of the CAA, 42 U.S.C. § 7413(a)(4).

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, 1355 and CAA Section 113(b), 42 U.S.C. § 7413(b).  The Court has personal jurisdiction over the parties.

3.    Venue lies in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), and CAA Section 113(b), 42 U.S.C. § 7413(b), because the violations occurred in, and Defendant conducts business in, this judicial district.

4.    Authority to bring this civil action is vested in the Attorney General of the United States, pursuant to 28 U.S.C. §§ 516 and 519, and CAA Sections 113(b) and 305, 42 U.S.C. §§ 7413(b) and 7605.

**NOTICE TO STATE**

5.      Notice of the commencement of this action has been provided to the State of Washington as provided in CAA Section 113(b), 42 U.S.C. § 7413(b).

**PARTIES**

6.      Plaintiff is the United States of America, acting at the request of the EPA, an agency of the United States.

7.      Defendant is a Washington corporation that has at all times relevant to this Complaint owned or operated a chemical storage and distribution business ("Facility") in Othello, Washington, which has a population of approximately 8,000 and is located in Adams County.

8.      Defendant is a "person" under CAA Section 302(e), 42 U.S.C. § 7602(e).

**STATUTORY AND REGULATORY FRAMEWORK**

CLEAN AIR ACT RISK MANAGEMENT PROGRAM REQUIREMENTS

9.      Section 112(r) of the CAA, 42 U.S.C. § 7412(r), authorizes EPA to promulgate regulations and programs in order to prevent and minimize the consequences of accidental releases of certain regulated substances, including extremely hazardous substances.

10.     CAA Section 112(r)(7), 42 U.S.C. § 7412(r)(7), and Part 68[1] require the owner or operator of a stationary source at which a regulated substance is present in more than a threshold quantity in a single process to develop and implement a risk management plan ("RMP") and program to detect and prevent or minimize accidental releases of such substances from the stationary source and to provide a prompt emergency response to any such releases in order to protect human health and the environment.

11.     CAA Section 112(r)(2)(C), 42 U.S.C. § 7412(r)(2)(C), and 40 C.F.R. § 68.3 define "stationary source" as any buildings, structures, equipment, installations, or substance emitting stationary activities that belong to the same industrial group, are located on one or more contiguous properties, are under the control of the same person (or persons under common control), and from which an accidental release may occur.  See also 40 C.F.R. § 68.3 (definition of stationary source).

---

[1] Part 68 has been revised since September 17, 2013, the first date of the alleged violations.  With a few exceptions specifically noted, the revisions only resulted in renumbering of provisions relevant to this Complaint.  Citations are to the version of Part 68 currently in effect, with a notation, where applicable, to the citation in effect at the time the violation began.

12.     "Threshold quantity" is the quantity specified for regulated substances pursuant to CAA Section 112(r)(5), listed in 40 C.F.R. § 68.130 and determined to be present at a stationary source as specified in 40 C.F.R. § 68.115.

13.     40 C.F.R. § 68.3 defines "covered process" as a "process" that has a regulated substance present in more than a threshold quantity as determined under 40 C.F.R. § 68.115.

14.     Part 68 classifies covered processes into three program levels to ensure that risk management program requirements appropriately match the size and risks of regulated processes.  Program 1 is the least comprehensive, and Program 3 is the most comprehensive.

15.     Under 40 C.F.R. §68.10(a), except in circumstances not relevant to this action, an  owner or operator of a stationary source that has more than a threshold quantity of a regulated substance in a process, as determined under 40 C.F.R. § 68.115, shall comply with the requirements of Part 68 no later than the latest of the following dates:  (1) June 21, 1999;  (2) Three years after the date on which a regulated substance is first listed under 40 C.F.R. § 68.130; (3) The date on which a regulated substance is first present above a threshold quantity in a process; or (4) For any revisions to Part 68, the effective date of the final rule that revises Part 68.

16.     Anhydrous ammonia ("ammonia") is listed as a regulated substance under CAA Section 112(r)(3), 42 U.S.C. § 7412(r)(3), and 40 C.F.R. §§ 68.3 and 68.130, with a threshold quantity of 10,000 pounds.

## **GENERAL ALLEGATIONS**

### The Defendant and the Facility

17.     Defendant has at all relevant times been the "owner or operator" (as those terms are defined in CAA Section 112(a)(9), 42 U.S.C. § 7412(a)(9), of the Facility located at 101 West Fir Street, Othello, Washington 99344.

18.     Defendant accepts chemicals, including ammonia, by railcar and/or truck at the Facility, stores the chemicals on site at the Facility, and then sells and/or distributes the chemicals to third parties.

19.     EPA conducted an inspection of the Facility on September 17, 2013, to gather information relating to Defendant's compliance with CAA Section 112(r)(7), 42 U.S.C. § 7412(r)(7), and Part 68, with respect to Defendant's storage and distribution of ammonia at the Facility.

20.     EPA issued an Administrative Compliance Order on Consent dated April 13, 2016 ("April 2016 AOC") under CAA Section 113(a)(4), 42 U.S.C. § 7413(a)(4), which identified alleged violations of CAA Section 112(r)(7) and Part 68 relating to Defendant's storage and distribution of ammonia at the Facility and which ordered Defendant to take measures on specified dates to correct the

1  violations EPA had identified in the April 2016 AOC. The April 2016 AOC did not

2  assert or settle any potential penalty claims associated with the violations.

3      21.    Defendant agreed to issuance of the April 2016 AOC.

4      22.    As alleged more specifically below, Defendant failed to timely

5  comply with numerous requirements of the April 2016 AOC.

6      23.    On June 21, 2017, EPA conducted a follow-up inspection of the

7  Facility ("June 2017 Inspection") to gather information additional information

8  relating to Defendant's compliance with CAA Section 112(r)(7) and Part 68

9  relating to Defendant's storage and distribution ammonia at the Facility.

10     24.    EPA identified continuing and additional CAA Section 112(r)(7) and

11 Part 68 violations relating to Defendant's storage and distribution of ammonia at

12 the Facility as a result of EPA's June 21, 2017 Inspection.

13                    Ammonia Covered Process

14     25.    Defendant has at all relevant times been the "owner or operator" (as

15 those terms are defined in CAA Section 112(a)(9), 42 U.S.C. § 7412(a)(9), and

16 Part 68) of the vessels and equipment at the Facility that are used to store and

17 transfer ammonia to trucks owned or operated by Defendant for delivery to third

18 parties ("ammonia storage and distribution process").

19     26.    The ammonia storage and distribution process at the Facility includes

20 or has included at least four storage tanks ("Spud," "Wiener," "Oscar," and the

"Bertha" tank railcar), associated pumps, a compressor, piping, valves, and hoses, and trucks used to transport ammonia when connected to other process equipment (collectively, "ammonia process equipment").

27.    The ammonia process equipment at the Facility can be and has at times been interconnected and thus constitutes a single "process" as defined in 40 C.F.R. § 68.3.

28.    The ammonia stored at the Facility is not in "storage incident to transportation" within the meaning of the definition of "stationary source" in 40 C.F.R. § 68.3.

29.    Defendant most recently filed RMPs on January 10, 2013, January 16, 2018, June 6, 2019, and September 18, 2020, identifying its ammonia storage and distribution process as a covered process with a maximum capacity of 320,000 pounds of ammonia, well above the threshold quantity for ammonia of 10,000 pounds in a single process.

30.    At all relevant times, Defendant's ammonia storage and distribution process has been and continues to be a "covered process" as defined in 40 C.F.R. § 68.3, and subject to 40 C.F.R. Part 68 ("Ammonia Covered Process").

31.    Defendant's Ammonia Covered Process is subject to the OSHA Process Safety Management requirements in 29 C.F.R. § 1910.119.

32.    Although the RMP filed by Defendant on January 10, 2013 asserts the Ammonia Covered Process is Program 3, the RMPs filed by Defendant on January 16, 2018, June 6, 2019, and September 18, 2020 asserts Defendant's Ammonia Covered Process is Program 2.

33.    Based on information provided by Defendant regarding the ratio of its retail sales of ammonia to its total sales of ammonia and Defendant's most recent RMP filing, EPA has assumed for purposes of this Complaint that the Ammonia Covered Process is a Program 2 process under 40 C.F.R. Part 68.

34.    Based on Defendant's most recent RMP filing, a worst-case release from its Ammonia Covered Process would affect approximately 14,000 people, including schools, residences, hospitals, and major commercial or industrial areas.

35.    The Bertha tank railcar was built in approximately 1965.  For the past approximately 30 years, through at least June 2017, the Bertha tank railcar has been stationary at the Facility and used as an ammonia storage tank as part of the Ammonia Covered Process.

36.    Based on information and belief, Multistar last used the Bertha tank railcar to store ammonia on approximately July 1, 2017.

37.    Defendant represented to EPA that the Oscar storage tank was installed on approximately October 17, 2019, and was first used to storage ammonia on approximately March 19, 2020.

38.    The Spud, Wiener, and Oscar storage tanks at the Multistar Facility are stationary pier-mounted, above-ground, nonrefrigerated ammonia storage installations.

## FIRST CLAIM FOR RELIEF

*(CAA Section 112(r):  Failure to Develop a Management System)*

39.    Under 40 C.F.R. § 68.15(a), the owner or operator of a stationary source with processes subject to Program 2 or Program 3 must develop a management system to oversee the implementation of the risk management program elements at the stationary source.

40.    During EPA's September 2013 inspection, Defendant was unable to provide documentation of its management system for overseeing the implementation of the risk management program elements for its Ammonia Covered Process.

41.    Defendant submitted to EPA a document dated July 18, 2015 entitled "Risk Management Plan Management System" for its Ammonia Covered Process.

42.    Defendant failed to timely develop a management system for its Ammonia Covered Process, in violation of 42 U.S.C. § 7412(r)(7) and 40 C.F.R. § 68.15(a).

## SECOND CLAIM FOR RELIEF

*(CAA Section 112(r):  Failure to Compile Safety Information)*

43.     Under 40 C.F.R. § 68.48(a), the owner or operator of a Program 2 covered process shall compile and maintain specified up-to-date safety information related to the regulated substances, processes, and equipment that includes, among other things, safe upper and lower temperatures, pressures, flows and compositions; equipment specifications; and codes and standards used to design, build and operate the process.  See 40 C.F.R. § 68.48(a)(3), (4), and (5).

44.     Under 40 C.F.R. § 68.48(b), the owner or operator of a Program 2 covered process shall ensure that the process is designed in compliance with recognized and generally accepted good engineering practices ("RAGAGEP"). Compliance with Federal or state regulations that address industry-specific safe design or with industry-specific design codes and standards may be used to demonstrate compliance with 40 C.F.R. § 68.48(b).

45.     Under 40 C.F.R. § 68.48(c), the owner or operator of a Program 2 covered process shall update the safety information if a major change occurs that makes the process safety information inaccurate.

46.     In light of the hazards posed by the mishandling of chemicals at industrial facilities, industry trade associations have issued standards for the storage and handling of chemicals at such facilities.  For example, the American

National Standards Institute ("ANSI") in conjunction with the Compressed Gas Association ("CGA") have published ANSI/CGA G-2.1-2014, "Requirements for the Storage and Handling of Anhydrous Ammonia."  The American Society of Mechanical Engineers ("ASME") and ANSI published ANSI/ASME A13.1-2015, "Scheme for the Identification of Piping Systems."  The American Petroleum Institute ("API") has published 510, "Pressure Vessel Inspection Code: In-Service Inspection, Rating, Repair and Alteration."  In the State of Washington, Washington Administrative Code Ch. 296-104 sets forth requirements for unfired pressure vessels.  These standards and guidance, which are updated from time to time, represent RAGAGEP for Defendant's Ammonia Covered Process.

47.    At the time of EPA's September 2013 inspection:

    a.    Defendant did not have documentation of the following process safety information for two ammonia pumps that Multistar brought to the Facility in 2010 ("Ammonia Pumps") and had physically connected by piping to the Spud storage tank:  safe upper and lower temperatures, pressures, flows, and compositions; equipment specifications; and codes and standards used to design, build and operate the pumps as part of the Ammonia Covered Process.

    b.    The Spud and Weiner storage tanks were not protected by barriers on all sides to prevent damage from trucks and other vehicles.

c.  The Spud and Wiener storage tanks were not protected by suitable means against tampering or theft when the installation was left unattended.

d.  The piping in the Ammonia Covered Process was not labeled to identify ammonia flow direction, physical state, and content.

e.  Defendant did not have materials of construction and equipment specifications for the Bertha tank railcar.

f.  Defendant did not have documents showing that the Bertha tank railcar was designed in compliance with RAGAGEP.

48.     Paragraphs 4.2., 4.2.1, 4.2.2, and 4.3 of the April 2016 AOC required Defendant to, among other things, by June 13, 2016, submit the safety information required by 40 C.F.R. § 68.48(a)(3), (4) and (5) and (c) for the Ammonia Pumps; and compile and submit documentation that the Spud and Weiner storage tanks and the Bertha tank railcar comply with RAGAGEP, as required by 40 C.F.R. § 68.48(b).

49.     At the time of EPA's June 2017 inspection:

a.  The Spud and Wiener storage tanks were not labeled on at least two sides with "Anhydrous Ammonia" in a minimum size of 3.9 inches.

United States of America Complaint - 13

1          b.  The Wiener storage tank was mounted on wood railroad ties and

2              not on properly designed concrete supports.

3      50.    Physically connecting the Ammonia Pumps to the Spud storage tank

4  some time before September 2013 and then later physically connecting the

5  Ammonia Pumps to power in March 2014 were each a major change, as defined in

6  40 C.F.R. § 68.3, to the Ammonia Covered Process because the existing safety

7  information for the process was no longer accurate and because both changes

8  involved the introduction of new process equipment that resulted in a change to

9  safe operating limits or other alterations that introduced a new hazard.

10     51.    Based on information provided by Defendant, Defendant:

11         a.  Obtained materials of construction and equipment specifications

12             for the Bertha tank railcar by approximately March 8, 2016.

13         b.  Completed compilation of the safety information for the Ammonia

14             Pumps by approximately July 13, 2016.

15         c.  Installed locks on the valves of the Spud and Weiner storage tanks

16             by approximately June 13, 2016.

17         d.  Completed installation of barriers on all sides of the Spud and

18             Weiner storage tanks sometime between approximately March 10,

19             2017 and June 21, 2017.

20

e.  Labeled the piping in the Ammonia Covered Process with
    ammonia flow direction, physical state, and content by
    approximately January 5, 2018.

f.  Properly labeled the Spud and Weiner storage tanks as containing
    ammonia by approximately April 10, 2018.

g.  Completed installation of concrete footings and foundations for the
    Weiner storage tank by approximately September 27, 2018.

52.    Defendant failed to timely compile and maintain, and, when a major change occurred that caused prior information to be inaccurate, to update safety information for the Ammonia Pumps as part of the Ammonia Covered Process, in violation of 42 U.S.C. § 7412(r)(7), 40 C.F.R. § 68.48(a) and (c).

53.    Defendant failed to timely ensure the Ammonia Covered Process was designed in compliance with RAGAGEP, in violation of 42 U.S.C. § 7412(r)(7), 40 C.F.R. § 68.48(b).

### THIRD CLAIM FOR RELIEF

*(CAA Section 112(r):  Failure to Conduct a Hazard Review)*

54.    Under 40 C.F.R. § 68.50(a), the owner or operator of a Program 2 covered process shall conduct a review of the hazards associated with the regulated substances, process, and procedures that identifies: 1) the hazards associated with the process and regulated substances; 2) opportunities for equipment malfunctions

or human errors that could cause an accidental release; 3) the safeguards used or needed to control the hazards or prevent equipment malfunction or human error; and 4) any steps used or needed to detect or monitor releases.

55.    Under 40 C.F.R. § 68.50(c), the owner or operator shall document the results of the review and ensure that problems identified are resolved in a timely manner.

56.    Under 40 C.F.R. § 68.50(d), the review shall be updated at least once every five years.  The owner or operator shall also conduct reviews whenever a major change in the process occurs; all issues identified in the review shall be resolved before startup of the changed process.

57.    Defendant's 2005 RMP referred to a hazard review dated February 1, 2005 (Program Level 2) and its 2013 RMP referred to a PHA dated August 6, 2008 (Program Level 3).

58.    During EPA's September 2013 RMP inspection, Defendant was unable to produce documentation of either the February 1, 2005 hazard review or the August 6, 2008 PHA.

59.    Defendant did not conduct a hazard review prior to connecting the ammonia pumps to the Ammonia Covered Process.

60.    On December 31, 2015, Defendant submitted to EPA documentation dated the same date purporting to contain a hazard review or PHA of its Ammonia Covered Process.

61.    The documents Defendant submitted to EPA on December 31, 2015 did not meet the requirements of 40 C.F.R. § 68.50(a) for a hazard review, such as identifying the hazards associated with the process or the safeguards used or needed to control the hazards or prevent equipment malfunction or human error.

62.    Paragraphs 4.4 and 4.5 of the April 2016 AOC required Defendant to, among other things:

      a.    By July 10, 2016, perform a review of the hazards of the ammonia storage process in accordance with 40 C.F.R. § 68.50(a) and (b), document the results of the review, and submit a copy of the resulting hazard review report.

      b.    By August 9, 2016, submit a report showing that each problem identified in the hazard review report had been addressed with the date of completion and an explanation of how the problem was addressed to demonstrate compliance with 40 C.F.R. § 68.50(c).

63.    On July 13, 2016, Defendant submitted to EPA its hazard review and report.

64.    Defendant failed to timely conduct a hazard review of its Ammonia Covered Process meeting the requirements of 40 C.F.R. § 68.50(a) and/or to timely update the review at least once every five years, or when a major change in the process occurred, in violation of 42 U.S.C. § 7412(r)(7), 40 C.F.R. § 68.48(a), (c), and (d).  To the extent Defendant has elected or is required to meet the requirements for Program 3 covered processes, such failures also violate 42 U.S.C. § 7412(r)(7) and 40 C.F.R. §§ 68.67 and 68.75.

## **FOURTH CLAIM FOR RELIEF**

*(CAA Section 112(r):  Failure to Develop and Implement Written Operating Procedures, Conduct Training, and Establish and Implement Maintenance Requirements)*

65.    Under 40 C.F.R. § 68.52(a), the owner or operator of a Program 2 covered process shall prepare and implement written operating procedures that provide clear instructions or steps for safely conducting activities associated with each covered process consistent with the safety information for that process and that address the operating modes and activities specified in 40 C.F.R. § 68.52(b). The owner or operator shall also ensure that the operating procedures are updated, if necessary, whenever a major change occurs prior to startup of the changed process as provided in 40 C.F.R. § 68.52(c).

66.    Under 40 C.F.R. § 68.54(b), the owner or operator of a Program 2 covered process shall provide refresher training at least every three years, or more

1  often if necessary, to each employee involved in operating a process to ensure that

2  the employee understands and adheres to the current operating procedures of the

3  process.  Under 40 C.F.R. § 68.54(d), the owner or operator of a Program 2

4  covered process shall ensure that operators are trained in any updated or new

5  procedures prior to startup of a process after a major change.

6        67.    Under 40 C.F.R. § 68.56, owner or operator of a Program 2 covered

7  process shall prepare and implement procedures to maintain the on-going

8  mechanical integrity of process equipment; train or cause to be trained each

9  employee involved in maintaining the on-going mechanical integrity of the process

10  in the hazards of the process, in how to avoid or correct unsafe conditions, and in

11  the procedures applicable to the employee's job tasks; and perform or cause to be

12  performed inspections and tests on process equipment that follow recognized and

13  generally acceptable good engineering practices and the frequency of which are

14  consistent with applicable manufacturers' recommendations, industry standards or

15  codes, good engineering practices, and prior operating experience.

16                          *Operating Procedures*

17        68.    Operating procedures Defendant submitted to EPA on December 31,

18  2015 for the Ammonia Covered Process did not address all equipment in the

19  Ammonia Covered Process (compressor and Ammonia Pumps) or the steps

20

United States of America Complaint - 19

required to correct or avoid deviations from operating limits defined in the operating procedures.

69.     Defendant did not update its operating procedures to provide clear instructions or steps for safely using the Ammonia Pumps as part of the Ammonia Covered Process before it hooked the Ammonia Pumps up to power in March 2014.

70.     Paragraphs 4.6 and 4.7 of the April 2016 AOC required Defendant to, among other things, by June 13, 2016, develop, implement, and submit new or revised operating procedures for the Ammonia Covered Process to meet the requirements of 40 C.F.R. § 68.52(a) and (b) for the Ammonia Pumps and the requirements of 40 C.F.R. § 68.52(a), (b)(4), and (b)(7) for the rest of the equipment in Ammonia Covered Process.

71.     Defendant did not submit to EPA until July 13, 2016 revised operating procedures for the Ammonia Covered Process that addressed the steps required to correct or avoid the consequences of deviations from operating limits defined in the operating procedures for all equipment in the Ammonia Covered Process.

72.     During EPA's June 17, 2017 inspection, Defendant did not have written operating procedures that addressed:

      a.   The following aspects of normal operations:  the liquid ammonia transfer process to the Bertha tank railcar to prevent an overfill

event since there are no liquid level fill gauges on the Bertha tank railcar and the loading of the Wiener storage tank with ammonia from the Bertha tank railcar.

    b.  The following aspects of emergency operations:  emergency shut off valve operations for all tanks.

73.    Defendant's revised operating procedure dated February 15, 2018 for unloading ammonia from railcars into storage tanks at the Facility did not include all steps for safely conducting unloading activities, such as verifying that the railcar delivering the ammonia is secured with chocks and that a sign is posted warning that the railcar is being unloaded, instructions that were included in a December 18, 2017 version of this operating procedure.

74.    Defendant's March 18, 2020 operating procedure for truck loading from the Oscar storage tank did not include instructions that the wheels of the tank truck into which ammonia is loaded from the Oscar tank be chocked.

75.    Defendant submitted to EPA updates to its operating procedures for its Ammonia Covered Process between October 17, 2015 and December 24, 2019 that address the deficiencies discussed in Paragraphs 68-74.

76.    Defendant failed to timely prepare and implement written operating procedures for all equipment in its Ammonia Covered Process meeting the requirements of 40 C.F.R. § 68.52(a) and (b) and failed to timely ensure that the

operating procedures for its Ammonia Covered Process were updated when major changes occurred and prior to startup of the changed process, in violation of 42 U.S.C. § 7412(r)(7), 40 C.F.R. § 68.52(a), (b), and (c).

### Training

77.     During EPA's September 2013 inspection, Defendant was unable to provide documentation of three-year refresher training for the operators for the Ammonia Covered Process.

78.     Defendant did not provide training to the operators of the Ammonia Covered Process on operating procedures that included the Ammonia Pumps until approximately June 13, 2016.

79.     Based on information and belief, Defendant did not timely provide training to the operators of the Ammonia Covered Process on operating procedures that include the Oscar storage tank.

80.     Defendant failed to timely provide refresher training to the operators of its Ammonia Covered Process, in violation of 42 U.S.C. § 7412(r)(7) and 40 C.F.R. § 68.54(b) and (d).

### Maintenance

81.     During EPA's September 2013 inspection, Defendant did not have documentation of inspections and testing on process equipment that is part of the

Ammonia Covered Process, such as piping, hoses, compressor, filters, valves, and pressure vessels.

82.    An Information Request EPA issued to Defendant on September 11, 2014 ("September 2014 Information Request") required Defendant to describe and list any industry standards followed for the maintenance of process equipment; identify the maintenance procedures and the individuals responsible for writing, reviewing, and approving maintenance procedures to meet these industry standards; explain the inspection status of all process equipment; and provide supporting documentation.

83.    The documents submitted by Defendant to EPA in response to the September 2014 Information Request did not describe or include any procedures for maintaining the on-going mechanical integrity of the Ammonia Pumps connected to power in March 2014.

84.    The mechanical integrity procedures Defendant submitted to EPA on December 31, 2015, dated the same date, did not include procedures for conducting inspections and tests of all equipment in the Ammonia Covered Process that follow RAGAGEP.  For example, the procedures did not address equipment such as the Ammonia Pumps and shutoff valves that are part of the Ammonia Covered Process.

85.     Paragraphs 4.8 through 4.11 of the April 2016 AOC required Defendant to, among other things, by specified dates, take specified actions and submit to EPA specified documentation, to demonstrate that it was in compliance with the maintenance requirements of 40 C.F.R. § 68.56, including preparing and submitting written inspection and testing procedures for all equipment in the Ammonia Covered Process; documenting that such procedures follow RAGAGEP and that the frequency of inspections and tests of process equipment are consistent with applicable manufacturers' recommendations, industry standards or codes, and good engineering practices or more frequent if determined to be necessary by prior operating experience; performing inspections and tests on all process equipment in the Ammonia Covered Process using written procedures meeting such requirements; documenting all such inspections and testing; submitting copies of the inspection and testing records for a specified two-week period; training employees involved in maintaining the on-going integrity of the Ammonia Covered Process; and submitting documentation of such training.

86.     The inspection checklist Defendant submitted to EPA on June 13, 2016 did not meet the requirements of 40 C.F.R. § 68.56.  For example, it did not address the recommendation in the manufacturer's manual for the Ammonia Pumps providing for a three month maintenance interval for the Ammonia Pumps or the provision in ANSI/CGA G-2.1 2014, Section 5.8.16, and the instructions of

the valve on the Spud and Weiner storage tanks providing for a ten year

replacement interval for the safety pressure relief devices.

87.    The undated, written procedures for conducting inspections and

testing of the equipment in the Ammonia Covered Process that Defendant

submitted to EPA on July 13, 2016, did not address all equipment in the Ammonia

Covered Process, specifically, the compressors, storage tanks, filtration cartridges,

and the shut off/isolation valves.

88.    Defendant did not train or cause to be trained each employee involved

in maintaining the on-going integrity of the Ammonia Covered Process in the

hazards of the process, in how to avoid or correct unsafe conditions, and in the

procedures applicable to the employee's job tasks to ensure that such employee can

perform job tasks in a safe manner until at least June 13, 2016.

89.    Defendant did not perform any inspections or testing of equipment in

the Ammonia Covered Process during the two-week period beginning June 13,

2016 even though Defendant's maintenance procedures at the time called for daily

inspections of some equipment.

90.    Based on information and belief, there were also other times during

which Defendant did not perform inspections or testing of equipment in the

Ammonia Covered Process at the frequency specified in its maintenance

procedures.

United States of America Complaint - 25

91.     On June 21, 2017, Defendant submitted to EPA revised and additional maintenance procedures for the Ammonia Covered Process.

92.     On June 21, 2017, Defendant submitted to EPA records of daily inspections of the equipment in the Ammonia Covered Process for June 2 to June 21, 2017.

93.     Defendant failed to timely prepare and implement procedures to maintain the on-going mechanical integrity of all process equipment in its Ammonia Covered Process, timely train or cause to be trained each employee involved in maintaining the on-going mechanical integrity of the Ammonia Covered Process in the hazards of the process, and timely perform or cause be performed inspections and tests on process equipment in the Ammonia Covered Process following RAGAGEP and at the frequency specified in 40 C.F.R. § 68.56(d), in violation of 42 U.S.C. § 7412(r)(7), 40 C.F.R. § 68.56(a), (b), and (d).

## FIFTH CLAIM FOR RELIEF

*(CAA Section 112(r): Failure to Certify Compliance Audit and Promptly Respond to Audit Findings)*

94.     Under 40 C.F.R. § 68.58, the owner or operator of a Program 2 covered process shall, among other things, certify that they have evaluated compliance with the provisions of 40 C.F.R. §§ 68.48-68.60 at least every three years to verify that the procedures and practices developed under these provisions

are adequate and are being followed; develop a report of the audit findings; promptly determine and document an appropriate response to each of the findings of the compliance audit and document that deficiencies have been corrected; and retain the two most recent compliance audit reports that have been prepared within the last five years.

95.     During EPA's September 2013 inspection, Defendant provided EPA a compliance audit report dated September 1, 2012 of its Ammonia Covered Process that was not certified ("2012 Compliance Audit Report").

96.     At that inspection, Defendant did not have documentation showing that it had promptly determined and documented an appropriate response to each of the findings of the 2012 Compliance Audit Report or that deficiencies identified in the 2012 Compliance Audit had been corrected.

97.     On December 31, 2015, Defendant submitted to EPA a compliance audit report dated September 8, 2015 for a compliance audit of its Ammonia Covered Process conducted from September 1 through September 3, 2015 that was not certified ("2015 Compliance Audit Report").

98.     The 2015 Compliance Audit Report did not include any information showing that Defendant had promptly determined and documented an appropriate response to each of the findings of the 2015 Compliance Audit Report or that deficiencies had been corrected or were under a schedule for correction.

99.     Paragraphs 4.11.1, 4.11.2, and 4.12 of the April 2016 AOC required Defendant to, by June 13, 2016, among other things, promptly determine and document an appropriate response to each of the findings of the 2015 Compliance Audit Report, to document that the deficiencies had been corrected, and to submit a copy of a report documenting an appropriate response for each deficiency, documenting which deficiencies had been addressed (including the date and how) and, for those that had not yet been addressed, a date and method for addressing the deficiency.

100.    Defendant did not submit until approximately July 13, 2016 information documenting an appropriate response to each finding of deficiency in the 2015 Compliance Audit Report and that all such deficiencies had been corrected or were under a schedule for correction in a specified manner.

101.    Defendant failed to certify its 2012 and 2015 Compliance Audit Reports, promptly determine and document an appropriate response to each of the findings of deficiencies in its 2015 Compliance Audit Report and that deficiencies had been corrected or were under a schedule for correction, and failed to retain the most two recent compliance audit reports prepared within five years, in violation of 42 U.S.C. § 7412(r)(7), 40 C.F.R. § 68.58(a) and (d).

## SIXTH CLAIM FOR RELIEF

*(CAA Section 112(r):  Failure to Update RMP)*

102.   Under 40 C.F.R. § 68.190(a) and (b)(7), the owner or operator of a stationary source subject to Part 68 shall review and update the RMP submitted under 40 C.F.R. § 68.150 within six months of a change that alters the Program level that applied to any covered process.

103.   Defendant filed an RMP in January 10, 2013, identifying its Ammonia Covered Process as Program 3, indicating that the process was subject to the OSHA Process Safety Management requirements in 29 C.F.R. § 1910.119.  See 40 C.F.R. § 68.10(i)(2).[2]

104.   In March 2016, Defendant submitted to EPA information to support its claim that the Ammonia Covered Process was a Program 2 rather than a Program 3 covered process.

105.   Defendant did not update and submit to EPA a revised RMP to change the Program level for its Ammonia Covered Process from Program 3 to Program 2 until approximately January 16, 2018.

106.   Defendant failed to timely update and submit to EPA revised RMPs as required, in violation of 42 U.S.C. § 7412(r)(7) and 40 C.F.R. § 68.190(b)(7).

## SEVENTH CLAIM FOR RELIEF

*(Failure to Comply with April 2016 AOC)*

---

[2] Previously 40 C.F.R. § 68.10(d)(2).

107.   Violations of administrative compliance orders are enforceable under CAA Section 113(a)(3), 42 U.S.C. § 7413(a)(3).

108.   The conduct identified in the Claims 2 through 5 above violated the April 2016 AOC and is subject to enforcement as provided in CAA Section 113(a)(3), 42 U.S.C. § 7413(a).

### Enforcement

109.   Under CAA Section 113(b), 42 U.S.C. § 7413(b), the United States may bring a civil action against any person for a permanent or temporary injunction or to assess and recover a civil penalty whenever such person has violated or is in violation of any requirement or prohibition of the CAA referenced therein, including Section 112(r), 42 U.S.C. § 7412(r).

110.   CAA Section 113(b), 42 U.S.C. § 7413(b), authorizes a civil penalty of not more than $25,000 per day for each violation.  The statutory maximum civil penalty has been adjusted over time as required by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701), and most recently, by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (28 U.S.C. § 2461), as provided in 40 C.F.R. Part 19.

111.   Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19, Defendant is liable for a civil penalty for the CAA violations alleged in

this Complaint of not more than $37,500 per day per violation for violations

occurring on or before November 2, 2015, and $102,638 per day per violation

thereafter.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States, respectfully requests that this

Court grant the following relief:

1.     Enter judgment finding Defendant is liable for the foregoing

violations;

2.     Assess civil penalties against Defendant in amounts not to exceed

those provided pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b);

3.     Order Defendant to take appropriate steps as may be necessary to

remedy any ongoing violations;

4.     Award the United States its costs in this action; and

5.     Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 1st day of April 2021.


JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment and Natural Resources
Division


/s/ David L. Dain
DAVID L. DAIN
Senior Counsel
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
999 18th Street, South Terrace, Suite 370
Denver, Colorado
(303) 844-7371
David.Dain@usdoj.gov

Joseph H. Harrington
Acting United States Attorney
Eastern District of Washington
John T. Drake
Assistant United States Attorney
920 W. Riverside Ave, # 300
Spokane, WA 99210-1494
Telephone:  (509) 835-6347
JDrake@usa.doj.gov

United States of America Complaint - 32