FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 08, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 2:21-cv-00130-SMJ |
| v. | CONSENT DECREE |
| MULTISTAR INDUSTRIES, INC., Defendant. | |

## TABLE OF CONTENTS

I.    JURISDICTION AND VENUE ............................................................3
II.   APPLICABILITY ...............................................................................4
III.  DEFINITIONS ...................................................................................4
IV.   CIVIL PENALTY ...............................................................................7
V.    COMPLIANCE REQUIREMENTS ....................................................8
VI.   REPORTING REQUIREMENTS .....................................................12
VII.  STIPULATED PENALTIES ..............................................................15
VIII. FORCE MAJEURE ...........................................................................19
IX.   DISPUTE RESOLUTION .................................................................22
X.    INFORMATION COLLECTION AND RETENTION ............................25
XI.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS .................28
XII.  COSTS .............................................................................................30
XIII. NOTICES .........................................................................................30
XIV.  EFFECTIVE DATE ...........................................................................31
XV.   RETENTION OF JURISDICTION ....................................................31
XVI.  MODIFICATION ..............................................................................32
XVII. TERMINATION ...............................................................................32
XVIII.PUBLIC PARTICIPATION .............................................................33
XIX.  SIGNATORIES/SERVICE ................................................................34
XX.   INTEGRATION ................................................................................34
XXI.  FINAL JUDGMENT .........................................................................35

1    Plaintiff United States of America, on behalf of the United States

2    Environmental Protection Agency ("EPA"), has filed a complaint in this action, or

3    concurrently with this Consent Decree under Section 113(b) of the Clean Air Act

4    ("CAA"), 42 U.S.C. 7413(b), alleging that Defendant, Multistar Industries, Inc.

5    violated the risk management program requirements of CAA § 112(r), 42 U.S.C. §

6    7412(r) and its implementing regulations promulgated at 40 C.F.R. Part 68.

7    The Complaint against Defendant alleges that Defendant operates a long-

8    standing anhydrous ammonia ("ammonia") distribution business in Othello,

9    Washington ("Facility").  Defendant accepts ammonia by railcar at the Multistar

10   Facility, stores the ammonia on site at the Facility, and then sells and/or distributes

11   the ammonia to third parties.

12   As described in the Complaint, the United States alleges that Defendant has

13   failed to comply with requirements of the CAA.

14   Defendant does not admit any liability to the United States arising out

15   of the transactions or occurrences alleged in the Complaint.

16   The Parties recognize, and the Court by entering this Consent Decree

17   finds, that this Consent Decree has been negotiated by the Parties in good faith and

18   will avoid litigation between the Parties and that this Consent Decree is fair,

19   reasonable, and in the public interest.

20

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.    **JURISDICTION AND VENUE**

1.    This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355; and CAA Section 113(b), 42 U.S.C. § 7413(b) and over the Parties.  Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a); and CAA Section 113(b), 42 U.S.C. § 7413(b), because the violations alleged in the Complaint are alleged to have occurred in, and Defendant conducts business in, this judicial district.  For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendant and consents to venue in this judicial district.

2.    For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b).

## II.    **APPLICABILITY**

3.      The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented. At least 30 Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA and DOJ in accordance with Section XIII (Notices). Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

5.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III.    **DEFINITIONS**

6.      Terms used in this Consent Decree that are defined in the CAA or in regulations implementing such statutes have the meanings assigned to them in such

Multistar Industries, Inc. Consent Decree - 4

1   statutes or regulations, unless otherwise provided in this Decree.  Whenever the

2   terms set forth below are used in this Consent Decree, the following definitions

3   apply:

4       "Ammonia Covered Process" means all activity at the Facility involving

5   ammonia, including any use, storage, manufacturing, handling, or on-site

6   movement of ammonia, or combination of these activities; the storage tanks

7   referred to by Defendant as "Spud," "Wiener;" and "Oscar" the Bertha Tank

8   Railcar (when containing ammonia); any other tank railcars containing ammonia

9   when disconnected from motive power; any other vessels or storage tanks

10  containing ammonia that are interconnected; any other separate vessels or storage

11  tanks containing ammonia that are located such that ammonia could be involved in

12  a potential release; and associated pumps, compressors, piping, valves, and hoses.

13  This definition does not include tank trucks or tank railcars when they are

14  connected to motive power.

15      "Bertha Tank Railcar" means the 1960s-era tank railcar, located at the

16  Facility, which Defendant has historically referred to as the "Bertha" tank, and

17  which, for many years, Defendant had historically used to store ammonia.

18  Defendant represents that it is not presently using the Bertha Tank Railcar to store

19  ammonia and has not used it to store ammonia since approximately July 1, 2017.

20      "Complaint" means the complaint filed by the United States in this action;

Multistar Industries, Inc. Consent Decree - 5

1    "Consent Decree" or "Decree" means this Decree;

2    "Day" means a calendar day unless expressly stated to be a business day.  In

3    computing any period of time for a deadline under this Consent Decree, where the

4    last day would fall on a Saturday, Sunday, or federal holiday, the period runs until

5    the close of business of the next business day;

6    "Defendant" means Multistar Industries, Inc.;

7    "DOJ" means the United States Department of Justice and any of its

8    successor departments or agencies;

9    "EPA" means the United States Environmental Protection Agency and any

10   of its successor departments or agencies;

11   "Effective Date" means the definition provided in Section XIV.

12   "Facility" means Defendant's ammonia storage and distribution facility

13   located at 101 West Fir Street in Othello, Washington.

14   "Paragraph" means a portion of this Decree identified by an arabic numeral;

15   "Parties" means the United States and Defendant;

16   "Section" means a portion of this Decree identified by a roman numeral;

17   and,

18    "United States" means the United States of America, acting on behalf of

19   EPA.

20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

## IV.    **CIVIL PENALTY**

7.    Within 30 Days after the Effective Date, Defendant shall pay the sum of $135,000 as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

8.    Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the DOJ account, in accordance with instructions provided to Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Eastern District of Washington after the Effective Date.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree.  The FLU will provide the payment instructions to:

Cindy Castaneda
Multistar Industries, Inc.
101 W. Fir Street
Othello, WA 99344
main@multistar-inc.com

on behalf of Defendant.  Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to DOJ and EPA in accordance with Section XIII (Notices).

9.      At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to DOJ via email or regular mail in accordance with Section XIII; and (iii) to EPA in accordance with Section XIII.  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in United States v. Multistar Industries, Inc. and shall reference the civil action number, CDCS Number and DOJ case number 90-5-2-1-12000/1.

10.     Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal income tax.

## V.      COMPLIANCE REQUIREMENTS

11.     Defendant shall comply with the risk management program requirements of CAA § 112(r)(7) and the regulations promulgated at 40 C.F.R. Part 68 with respect to the Ammonia Covered Process.

12.     Bertha Tank Railcar:

  a.      Defendant shall not place or store any ammonia in the Bertha Tank Railcar except as provided in this Paragraph and Paragraph 13.

  b.      At least 90 days prior to Defendant's intent to use the Bertha

Tank Railcar as part of the Ammonia Covered Process,
Defendant shall submit to EPA a report, supported by
appropriate documentation such as photos, engineering
evaluations, inspection and testing records, demonstrating that:

(1)     The Ammonia Covered Process meets the Program 2
eligibility requirements in 40 C.F.R. § 68.10(h), and the
Bertha Tank Railcar is designed and maintained in
compliance with Recognized and Generally Accepted
Good Engineering Practices, as provided in 40 C.F.R. §§
68.48(b) and 68.56(a) and (d);

(2)     The Ammonia Covered Process meets the Program 2
eligibility requirements in 40 C.F.R. § 68.10(h), and the
Bertha Tank Railcar complies with and is inspected and
tested consistent with Recognized and Generally
Accepted Good Engineering Practices, as provided in 40
C.F.R. §§ 68.65(d)(2) and 68.73(b) and (d) or that the
railcar is designed, maintained, inspected, and operating
in a safe manner, as provided in 40 C.F.R. §§
68.65(d)(3), and 68.73(b) and (d);

(3)     The Ammonia Covered Process meets the Program 3

eligibility requirements in 40 C.F.R. § 68.10(i), and the
Bertha Tank Railcar complies with and is inspected and
tested consistent with Recognized and Generally
Accepted Good Engineering Practices, as provided in 40
C.F.R. §§ 68.65(d)(2) and 68.73(b) and (d) or that the
railcar is designed, maintained, inspected, and operating
in a safe manner, as provided in 40 C.F.R. §§
68.65(d)(3), and 68.73(b) and (d).

c.    In making the demonstration under Paragraph 12(b) above,
Defendant shall show compliance with one of the following sets
of requirements or standards:

(1)    U.S. Department of Transportation requirements for
railcars in transportation, 49 C.F.R. Part 180;

(2)    American National Standards Institute/Compressed Gas
Association G-2.1-2014, "Requirements for the Storage
and Handling of Anhydrous Ammonia" for stationary
vessels storing ammonia and American Petroleum
Institute 510, "Pressure Vessel Inspection Code: In-
Service Inspection, Rating, Repair and Alteration";

(3)    Issuance of a Washington State "special" by the
Washington State Board of Boiler Rules under
Washington Administrative Code 296-104-019(1) and -
220;  or

(4)    Such other recognized and generally accepted good
engineering practices as are accepted by EPA.

Such demonstration shall be based on the version of the regulation or standard in
effect at the time of the demonstration.

Multistar Industries, Inc. Consent Decree - 10

13.   Demonstration.  If, within 60 days of submitting the report under Paragraph 12(b) above ("Bertha Demonstration"), EPA does not provide written notice to Defendant that it is disapproving the demonstration, use of the Bertha Tank Railcar to store ammonia as part of the Ammonia Covered Process is no longer prohibited under Paragraph 12(a) above, but remains subject to the continuing requirements of Paragraph 11 above.

14.   If EPA disapproves the Bertha Demonstration under Paragraph above, Defendant may invoke Dispute Resolution by sending a Notice of Dispute in accordance with Paragraph 41 below within 30 Days (or such other time as the Parties agree to in writing) after receipt of EPA's disapproval.  Disapproval of the Bertha Demonstration shall not be considered a violation of this Consent Decree subject to stipulated penalties under Section VII.

15.   Permits.  Where any compliance obligation under this Section requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  Defendant may seek relief under the provisions of Section VIII (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted

timely and complete applications and has taken all other actions necessary to

obtain all such permits or approvals.

## VI.    <u>REPORTING REQUIREMENTS</u>

16.    By July 31st and January 31st of each year after the entry of this

Consent Decree, until termination of this Decree pursuant to Section XVII,

Defendant shall submit electronically (followed by a mailed copy) a semi-annual

report for the preceding six months (January 1 to June 30 or July 1 to December

31) that identifies any non-compliance with the Consent Decree, including but not

limited to Paragraphs 11 and 12 above, and includes or is accompanied by:

      a.    Any certified compliance audits conducted during the reporting period of the Ammonia Covered Process under 40 C.F.R. §§ 68.58 or 68.79 (as applicable), along with documentation of steps taken to determine and document an appropriate response to each of the findings of the compliance audit and documentation that all deficiencies identified in the compliance audit have been corrected.

      b.    Any revisions to or new operating procedures implemented during the reporting period to meet the requirements of 40 C.F.R. §§ 68.52 or 68.69 (as applicable) for the Ammonia Covered Process.

c.    Any revisions to or new maintenance or inspection procedures implemented during the reporting period pursuant to 40 C.F.R. §§ 68.56 or 68.73 for the Ammonia Covered Process.

d.    Records of training conducted during the reporting period to meet the requirements of 40 C.F.R. §§ 68.54, 68.56(b), 68.71, or 68.73(c) for the Ammonia Covered Process.

e.    A description of any "major changes" (as defined in 40 C.F.R. § 68.3) to the Ammonia Covered Process, changes that triggered implementation of Defendant's management of change procedures, or the addition of new covered processes at the Facility during the reporting period pursuant to 40 C.F.R. §§ 68.48(c), 68.50(d), 68.52(c), 68.54(d), 68.75, or 68.77. For purposes of this paragraph only, the shipment of trimethylamine in railcars to the Multistar Facility and the subsequent shipment of trimethylamine by truck to a third party offsite of the Facility shall not be considered a "covered process."

f.    Inspection, testing, and maintenance records for any inspections, testing, or maintenance of equipment in any covered processes at the Facility, including hoses, piping, valves, compressors, pumps, pressure vessels, scrubber tank,

and filters (but excluding daily inspection records).

17.    Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA by email to EPA as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

18.    Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I have no personal knowledge that the information submitted is other than true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

19.    This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

20.    The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the CAA or its implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

Multistar Industries, Inc. Consent Decree - 14

21.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VII.     **STIPULATED PENALTIES**

22.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section VIII (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

23.     <u>Late Payment of Civil Penalty</u>.  If Defendant fails to pay the civil penalty required to be paid under Section IV (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $1,000 per Day for each Day that the payment is late.

24.     <u>Paragraphs 11 and 12</u>.  The following stipulated penalties shall accrue per violation per Day for each violation of a requirement of Paragraphs 11 or 12:

<u>Penalty Per Violation Per Day</u>          <u>Period of Noncompliance</u>

$500 ......................................... 1st through 30th Day
$1,200 ..................................... 31st Day and beyond

25.    <u>Reporting Requirements</u>.  The following stipulated penalties shall

accrue per violation per Day for each violation of the reporting requirements of

Section VI:

<u>Penalty Per Violation Per Day</u>          <u>Period of Noncompliance</u>

$250 ........................................ 1st through 30th Day
$750 ........................................ 31st Day and beyond

26.    <u>Other Violations</u>.  The following stipulated penalties shall accrue per

violation per Day for any other violation of this Consent Decree not specified in

Paragraphs 23-25 above:

<u>Penalty Per Violation Per Day</u>          <u>Period of Noncompliance</u>

$200 ........................................ 1st through 30th Day
$750 ........................................ 31st Day and beyond

27.    Stipulated penalties under this Section shall begin to accrue on the

Day after performance is due or on the Day a violation occurs, whichever is

applicable, and shall continue to accrue until performance is satisfactorily

completed or until the violation ceases.  Stipulated penalties shall accrue

simultaneously for separate violations of this Consent Decree.

28.    Defendant shall pay any stipulated penalty within 30 Days of

receiving the United States' written demand.

Multistar Industries, Inc. Consent Decree - 16

29.    The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

30.    Stipulated penalties shall continue to accrue as provided in Paragraph 27 above, during any Dispute Resolution, but need not be paid until the following:

a.    If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, Defendant shall pay the amount agreed upon by the Parties, or the amount determined by EPA to be owing, as the case may be, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.    If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.    If any Party appeals the District Court's decision, and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 30 Days of receiving the final appellate court

decision.

31.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth in Paragraph 8 above, and with the confirmation notices required by Paragraph 9 above, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

32.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

33.     The payment of penalties and interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Consent Decree.

34.     <u>Non-Exclusivity of Remedy</u>.  Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XI (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendant's violation of this Decree or applicable law, including but not limited to

an action against Defendant for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

### VIII.    FORCE MAJEURE

35.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

36.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice by email to EPA within 72 hours of

when Defendant first knew that the event might cause a delay. Within seven Days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

37.    If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time

for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

38.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

39.     If Defendant elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than 30 Days after receipt of EPA's notice.  In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 35  above.  If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX.    **DISPUTE RESOLUTION**

40.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

41.    Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends DOJ and EPA a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

42.    Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by sending DOJ and EPA a written Statement of Position regarding the matter in

Multistar Industries, Inc. Consent Decree - 22

dispute.  The Statement of Position shall include, but need not be limited to, any

factual data, analysis, or opinion supporting Defendant's position and any

supporting documentation relied upon by Defendant.

43.    The United States shall send Defendant its Statement of Position

within 45 Days of receipt of Defendant's Statement of Position.  The United

States' Statement of Position shall include, but need not be limited to, any factual

data, analysis, or opinion supporting that position and any supporting

documentation relied upon by the United States.  The United States' Statement of

Position shall be binding on Defendant, unless Defendant files a motion for judicial

review of the dispute in accordance with the following Paragraph.

44.    Defendant may seek judicial review of the dispute by filing with the

Court and serving on the United States, in accordance with Section XIII (Notices),

a motion requesting judicial resolution of the dispute.  The motion must be filed

within 30 Days of receipt of the United States' Statement of Position pursuant to

the preceding Paragraph.  The motion shall contain a written statement of

Defendant's position on the matter in dispute, including any supporting factual

data, analysis, opinion, or documentation, and shall set forth the relief requested

and any schedule within which the dispute must be resolved for orderly

implementation of the Consent Decree.

45.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

46.     <u>Standard of Review</u>

    a.     <u>Disputes Concerning Matters Accorded Record Review</u>. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 42 pertaining to EPA disapproval of the Bertha Demonstration under Paragraph 13, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

    b.     <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 42, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

47.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the

1    dispute so provides.  Stipulated penalties with respect to the disputed matter shall

2    continue to accrue from the first Day of noncompliance, but payment shall be

3    stayed pending resolution of the dispute as provided in Paragraph 30 above.  If

4    Defendant does not prevail on the disputed issue, stipulated penalties shall be

5    assessed and paid as provided in Section VII (Stipulated Penalties).

6         **X.      INFORMATION COLLECTION AND RETENTION**

7         48.     The United States and its representatives, including attorneys,

8    contractors, and consultants, shall have the right of entry into the Facility, at all

9    reasonable times, upon presentation of credentials, to:

10             a.      monitor the progress of activities required under this Consent

11                     Decree;

12             b.      verify any data or information submitted to the United States in

13                     accordance with the terms of this Consent Decree;

14             c.      obtain samples and, upon request, splits of any samples taken

15                     by Defendant or its representatives, contractors, or consultants;

16             d.      obtain documentary evidence, including photographs and

17                     similar data; and

18             e.      assess Defendant's compliance with this Consent Decree.

19

20

49.     Upon request, Defendant shall provide EPA or its authorized representatives splits of any samples taken by Defendant.  Upon request, EPA shall provide Defendant splits of any samples taken by EPA.

50.     Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

51.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information

to EPA.  Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendant asserts such a privilege, it shall provide the following:  (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant.  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

52.    Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

53.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI.    <u>EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS</u>

54.    This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

55.    The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the CAA or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 54 above.  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

56.    In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facility or Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the

instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 54.

57.    This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CAA, or with any other provisions of federal, State, or local laws, regulations, or permits.

58.    This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

59.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

XII.    **COSTS**

60.    The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

XIII.    **NOTICES**

61.    Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and sent by mail or email, with a preference for email, addressed as follows:

As to DOJ by email:        eescdcopy.enrd@usdoj.gov
                           Re: DJ # 90-5-2-1-12000/1

As to DOJ by mail:         EES Case Management Unit
                           Environment and Natural Resources
                           Division
                           U.S. Department of Justice
                           P.O. Box 7611
                           Washington, D.C.  20044-7611
                           Re: DJ # 90-5-2-1-12000/1

As to EPA by email:        R10enforcement@epa.gov

As to EPA by mail:         Director
                           Enforcement and Compliance Assurance
                             Division
                           EPA Region 10 (OCE-201)
                           U.S.EPA Region 10
                           1200 Sixth Avenue Ste. 155
                           Seattle, WA 98101

Multistar Industries, Inc. Consent Decree - 30

As to Defendant:                    Pete Vanourek
                                    Multistar Industries, Inc.
                                    101 W. Fir Street
                                    Othello, WA 99344
                                    main@multistar-inc.com

62.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

63.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing or transmission by email, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV.    EFFECTIVE DATE

64.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XV.    RETENTION OF JURISDICTION

65.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections IX and XVI, or effectuating or enforcing compliance with the terms of this Decree.

## XVI.    <u>MODIFICATION</u>

66.    The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

67.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 46 above, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII.    <u>TERMINATION</u>

68.    After three years from the Effective Date and after Defendant has (1) maintained satisfactory compliance with Paragraphs 11 and 12 of this Consent Decree for the twelve month period immediately prior to the submission of any Request For Termination made pursuant to this Section, (2) is in compliance with all other requirements of this Consent Decree, and (3) has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

69.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that Defendant has satisfactorily complied with said requirements, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

70.     If the United States does not agree that Defendant has satisfactorily complied with the requirements for termination of this Consent Decree, Defendant may invoke Dispute Resolution under Section IX.  However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until 60 Days after service of its Request for Termination.

### XVIII.    PUBLIC PARTICIPATION

71.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court

or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XIX.    SIGNATORIES/SERVICE

72.    Each undersigned representative of Defendant and the Section Chief of the Environmental Enforcement Section for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

73.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.  Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XX.    INTEGRATION

74.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings,

whether oral or written, concerning the settlement embodied herein.  The Parties

acknowledge that there are no representations, agreements, or understandings

relating to the settlement other than those expressly contained in this Consent

Decree.

## XXI.    **FINAL JUDGMENT**

75.    Upon approval and entry of this Consent Decree by the Court, this

Consent Decree shall constitute a final judgment of the Court as to the United

States and Defendant.  The Court finds that there is no just reason for delay and

therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 5.

Dated and entered this 8th day of _____June_____, 2021.

JUDGE SALVADOR MENDOZA, JR.
UNITED STATES DISTRICT JUDGE

Multistar Industries, Inc. Consent Decree - 35

1

2

3
                    FOR THE UNITED STATES OF AMERICA:

4
                    Jean E. Williams
                    Acting Assistant Attorney General
5
                    Environment and Natural Resources Division

6                        David L. Dain
                    _____
7                    David L. Dain
                    Senior Counsel
                    Environmental Enforcement Section
8                    U.S. Department of Justice
                    999 18th St.
9                    South Terrace, Suite 370
                    Denver, CO, 80202
10                    david.dain@usdoj.gov
                    (720) 287-9879
11
                    William D. Hyslop
12                    United States Attorney
                    Eastern District of Washington
13                    John T. Drake
                    Assistant United States Attorney
14                    Eastern District of Washington
                    920 W. Riverside Ave, # 300
15                    Spokane, WA  99201
                    JDrake@usa.doj.gov
16                    509-835-6347

17

18

19

20

Multistar Industries, Inc. Consent Decree - 36

FOR THE U.S. ENVIRONMENTAL
PROTECTION AGENCY:


/s/ Beverly Li
Beverly Li
Regional Counsel
U.S. Environmental Protection Agency, Region 10

/s/ Julie A. Vergeront
Julie A. Vergeront
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 10
Office of Regional Counsel

1

2                              FOR MULTISTAR INDUSTRIES, INC.:

3

4    3-15-21

     Date                       Pete Vanourek
5                               President and General Manager

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

Multistar Industries, Inc. Consent Decree - 38